Curia, per
Nott, J.
It would seem to me to be the most regular first to dispose of the question with regard to the right of appeal. But as that objection was not made until after the question of jurisdiction had been fully argued on both sides, it will be so much time lost to send the case back upon a mere matter of form, in order to let the same question come up again in another shape. I will therefore proceed to consider the prin-’ cipal question, as it appears on the face of the pro *344 ceedings, without regard to the regularity of the proceedings themselves. That will require' us to go back to the original action at law to inquire into the regularity of the first injunction and the proceedings connected with it. And here it will be observed that in the first instance the complainant did not pretend that his claim was of such a nature as to give jurisdiction to the Court of Equity. It was an action of trover to try the right of property. The aid of the Court of Equity was required merely as ancillary to the Court of Law, to restrain the defendant from parting with the property in contest, so that he might have the benefit of his judgment if he should succeed in establishing his right. And that at once presents the question, how far the Court of Equity has aright to interpose its authority in such a case*?
A new case may exist withoutinvol-ving a new principle.
That is a question of no inconsiderable difficulty and importance. I do not recollect ever to have heard of an injunction having been issued in this state to restrain a defendant in an action of trover from parting with the property until the right had been tried at law. No instance of such a case has been produced from the English books. And if such a one can be found, I am induced to think the scrutinizing eye of the Attorney General would have fallen upon it. It does not indeed follow, even though no such case can be found, that the power does not exist. If from analogy the case can be brought within the principles of equity jurisdiction, the authority of the Court ought to be maintained even though the power may not heretofore have been exercised. A new case may exist without involving any new principle. If it be true, that in an action of trover the effect of a judgment of law may be eluded by a transfer of the property the moment it is about to be obtained, and that a person may thus be running a perpetual race in pursuit of justice without ever being able to overtake it, there is certainly a great defect iiiour system of jurisprudence, which *345 calls loudly for redress. And if the Courts of Equity can, consistently with the settled doctrines of that Court, restrain the person in possession from transferring the property until the right can be determined, I am not disposed to be the first to say they shall not exercise it. And although I have not been able to find any case directly in point, there are many cases, both in the English and American books, bearing so strong a resemblance to such a case that, in point of principle, it will be somewhat difficult to draw a line of distinction between them. Mr Mit/ord (now Lord Redesdale) in his' Treatise upon Pleading in the Court of Chancery, 108, says, “ Courts of Equity will in many cases act as ancillary to the administration of justice in other Courts, by removing impediments to the fair decision of a question.” And in illustration of the rule he says in the next page, that pending a litigation the property in dispute is often,. m danger of being lost or injured, and in such cases a Court of Equity will interpose to preserve it, if the powers of the Court in which the litigation is are insufficient for that purpose. Thus, during a suit in an Ecclesiastical Court for administration of the effects a person dead, a Court of Equity will entertain a suit for the mere preservation of the property of the deceasedto till the litigation is determined. So an injunction will be granted to restrain the endorsement or negociation of a negotiable note, or to restrain the transfer of stock. Eden on Injunctions, 210,11. Lord Chedworth v. Edwards, 8 Ves. 46. If it be said, that it is allowed in England in those particular cases from motives of policy peculiar to that country, I answer, that the negro property of this country has as high claims to supremacy over every other personal chattel as bank stock or negotiable paper can have in England. It is therefore at least worthy of consideration, whether a Court of Equity may not, in perfect consistence with settled principles, interfere in those cases. *346 Perhaps a distinction may be taken between cases where the specific property is sought for as in detinue, from those cases -where damages alone can be recovered as in trover- E°r in trover the specific property would not be liable to the judgment in preference to any other, even if the party should be restrained from parting with it during the litigation 5 and there may appear some inconsistency in requiring the party to give security to have the property forthcoming at the termination of the suit, w^en it is not the object of the action to obtain the pro-itself but damages for the conversion. It might seem, therefore, more congenial with the spirit of equity jurisdiction, to limit it to the action of detinue, and all the advantages would be attained; for there are few cases, if any, where trover will lie, that detinue may not be maintained. But it is not my intention at present to express any decided opinion on the subject; because I do not consider it necessary to the decision of this case. I will not, therefore, say that the Chancellor did wrong in granting the injunction to restrain the defendant from parting with the property. But, perhaps, that was as far as he ought to have gone until the answers of the defendants came in. The authority to grant injunctions is one of the highest prerogatives of the Court of Chancery. It ought therefore to be exercised with a due regard to the rights of all the parties in interest, and with that degree of caution which, if possible, will leave all those rights unimpaired. Whether, therefore, that part of the order which directs the property to be transferred to the or to be sold in the event of the security not being given, upon the mere ex parte statement of the complainant, without affording the defendants an opportunity of being heard, was not premature, is at least questionable. These observations, however, are made more with a view to the practice in future in similar cases, than on acc0unt of any influence which they can have on the J J *347 decision of this case; for the parties all acquiesced at the time, and the period has long gone by when the exception ought to have been taken if any had been intended. .Before the answers of the defendants were put in, or even the subpoenas served on the action, Bingley, the defendant, died. By his death the suits both of law and equity abated. And in my opinion, so far as regards any thing which has been done since, all the proceedings may be considered as buried with him. There must have been necessarily an end of all those proceedings, because the action at law was for a tort which died with he defendant, and could not survive to his representa-And I have already shewn, that the bill in equity tive. „ „ „ was without foundation when the action at law was for being merely ancillary to the action at law the dent went with the principal.
Pending a equity will in-petty jn dis-Court'where ls lu,gated has not com-petentpowers protect u*
It seems interfere to preventslaves off pending an tínuefOT de" them; trovefwhere the plaintiff ges.
On an order tionto strain a party off daTesTtbe Chancolior them to be transferred to the complainant before the bill is heard.
merely ancillary to a suit at law, if the _ . -to does also.
This would bring me to the consideration of the proceedings, founded on the affidavit of Leslie, relative to the clandestine possession alleged to have been taken of the negroes by the complainant. But I will pass over that part of the case for the present, for the purpose of going into the consideration of the bill which is now before us. Enough has been said to shew that this can not be considered as a bill of revivor. The action against Edtoard Bingley was an action of trover which, being a tort, died with him: it did not survive to his representative. If the defendants or either of them have intermed-dled with the property of the complainant, they are individually liable, but they are not liable in the character of representative of Edward Bingley. Besides, neither of these defendants were parties to the former bill. Leslie’s name is indeed introduced as having purchased the property of Bingley, but no process is prayed against him. 2 Madd. Cha. 174. But even if he was a party he was only nominally so, and the bill having abated as to Bingley, the very substratum of the *348 proceedings against Leslie failed. It has already been shewn that the only foundation for the first bill was, the allegation that the defendant Edward Bingley was about to transfer or remove the property. But such an allegation against him furnished no ground for an injunction against either of these defendants. To enable the complainant to sustain a bill against the present defendants, some such charge should have been made against them, or some other ground of equity jurisdiction exhibited. But I can discover none, unless calling upon the defendants to disclose the names of the issue be one. And as they deny that there is any issue that ground fails. The grounds on which the Chancellor has sustained the jurisdiction of the Court are :—
First. That the case is complicated arid the remedy at law difficult.
Second. That as the defendant Leslie availed himself of the authority of the Court of Equity to get possession of the property, he ought not to be permitted to deny the complainant the aid of the Court to restore him the possession if he is entitled to it.
With regard to the first ground, the case does not appear to me complicated, nor the remedy at law difficult. The complainant claims the property under a deed of gift from Lewis Box. The defendant Leslie claims it under a bill of sale from Edward Bingley, the executor and legatee of Lewis Box. Nothing could be more simple than the title on each side, unless it was the remedy which might have been by a plain action of detinue or trover.
The principle assumed in the second ground may, to a certain extent, be correct. But it must be taken with some limitation. A Court must deal out equal handed justice to all the parties before it. It cannot at the same time have jurisdiction for one man and not for another standing in the same situation. If a Court should direct a man to be imprisoned without any justifiable cause, or *349 even where it has no jurisdiction, it may order him to be released again. Perhaps the case now under consideration may furnish as good an illustration of the rule as any that can be adduced. If the complainant had inveigled the property from the defendant during the pen-dency of the former suit, and while it was at his own request put into the keeping of the Court of Equity, I have no doubt but that he might have been attached for a contempt of the Court, and held in custody until he restored the property. But as soon as those proceedings ceased to exist the authority of the Court over the property ceased with them. The taking of the negroes by Robertson was a simple trespass, and was no more a contempt of the process of the Court of Equity than if his bill had never been filed. Ordering the attachment against Robertson upon the affidavit of Leslie, where no bill waspending, appears to me therefore as rather summary proceeding, which even the Court of in the plenitude of its power, ought not to have allowed. But suppose the Court in that case, for some reasons which we do not now see, to have acted within the true sphere of its authority, it would not give jurisdiction in this case. Suppose the Court of Equity should, by means of an attachment or any other process, direct the sheriff to turn a man out of his house, and put another into possession — that would not authorize the party ejected to bring an action of ejectment in the Court of Equity to regain the possession. And an action of trover can no more be maintained in a Court of Equity than an action of ejectment. To be sure, this anomalous proceeding has placed the complainant in a situation in which he would not otherwise have been placed. But a similar order by a Judge of the Common Pleas, or a common magistrate, or even by an individual acting without any authority, would have placed him precisely in the same situation. Assuming a jurisdiction in one case which a *350 Court does not possess cannot extend its authority to another case over which it had not jurisdiction before. And this Court can not violate all the rules of law to give rei>ef'to a person who may even be remediless without SUCh relief.
An attach-noTbe grant-aacon]°"ger pend"
Equity can not violate law to give relief.
But it appears to me that the decree of Chancellor Saussure is bottomed on a misconception of the facts connected with the former bill. He says, “ Robertson filed a bill in equity, and an order was made by Chancellor Waties for a special injunction, by the terms of which the possession of the slaves was directed to be placed in the hands of the defendant Henry Leslie, on his giving security to abide the event of the suit at law. Under that decree Leslie got possession of the slaves and even caused Robertson to be imprisoned for violating that order.” Now by a reference to the order made by Chancellor Waties, it will be seen that Leslie’s name is not mentioned in it. The order directed that Edward Bingley, who already had the negroes in possession, should give the security. It was not under that decree, as the Chancellor supposes, that Leslie got possession of the slaves. But they Were delivered to him by Bingley as a counter security for uniting with him in the bond given for the forthcoming of the slaves at the termination of the suit at law. So that the conclusion of the Chancellor is drawn from a state of facts which does not exist.
After giving the complainant therefore the benefit of the most latitudinary construction of all those proceedings in his favour, I cannot discover any jurisdiction in the Court of Equity to afford relief. Nor can the conduct of Leslie, however justly it may subject him to the censure which has been lavished upon him, vary the rights of the parties in that respect. The bill must therefore be dismissed for want of jurisdiction.
With regard to the preliminary question, whether an *351 appeal ought to have been sustained in this case, I feel no difficulty in saying, that if that question had been submitted in the first instance, the case ought not to have been heard. I think there is no rule which ought ° more rigidly to be adhered to than that an appeal ought not to be allowed from an interlocutory order. There is some difficulty in defining in terms so precise as is i-ii . . desirable what shall be' considered such interlocutory order as to preclude an appeal. But I think it may be laid down as a general rule, that an order which does not put a final end to the case, nor establish any principle which will finally affect the merits of the case, nor deprive the party of any benefit which he may have , , at a final hearing, ought to be considered an interlocutory order, from which no appeal ought to be allowed. In this case the defendant was, ordered to answer more fully. But that did not deprive him of the nefit of the answer which he had already put in. if a further answer had been unnecessary it did the party no harm, and therefore he ought to have complied with the order, and reserved his appeal until a final hearing, when perhaps it might have been unnecessary. The delay occasioned by allowing an appeal in every such case would be intolerable.' It is difficult, however, for the Court, in most cases, to ascertain the real merits of a motion, until one half the delay is occasioned which it is the object of the rule to avoid. The Court must therefore appeal to the good sense of the enlightened members of the bar, to assist in carrying their views into effect, when the principles are understood upon which appeals are to be brought up. It is the great interest of the community that business should be promptly dispatched, and it is not less the interest of the profession. There is nothing more true than the old maxim, that delay is the denial of justice. And although in this instance it is a question of but little importance, it has *352 afforded an opportunity of laying down a rule to which tjje Court must hereafter pertinaciously adhere.
appeal lies from an interlocutory order, viz. p„thaafn¿not: end t0 the establish any will finally affect the merits of the case or paiiy^fany benefit he & ■
- An order to interlocutory,
A defendant cannot demur and answer to teit hut mayt_ to different parts of the bill.
An answer to the same part overrules the demurrer.
An answer whichputs merits in issue is sufficient,
Defendant discovery and demurto the
With regard to pleading in the Court of Equity, there is no rule better established, than that a person cannot demur and answer to the same matter. He may demur 0ne part and answer to another; but an answer to the 1 same part of the bill to which he has demurred overrules the demurrer. It is another general rule, that where a defendant answers he must answer fully. That is to . . . , say, he must answer all the material allegations m the hill. What shall be a sufficient answer, however, must always be a matter addressed to the iudgment of the J ° Court. An answer to so much ot the bill as puts the whole merits of the case in issue is sufficient. For instance, where the bill is for a discovery and relief, and the relief depends upon the discovery, he may deny the discovery and demur to the relief. It is not necessary however to dwell upon this part of the case, as the bill has already been disposed of. The decree of the Chance}jor mUst therefore be reversed, and the bill dismissed.

Decree reversed.